IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SEAN HILL,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF GOVERNMENT EFFICIENCY; EXECUTIVE OFFICE OF THE PRESIDENT; OFFICE OF MANAGEMENT AND BUDGET; AND OFFICE OF PERSONNEL MANAGEMENT,<br><br>        Defendants. | 8:25CV56<br><br>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

## **INTRODUCTION**

Plaintiff challenges the alleged creation and operation of the Department of Government Efficiency (DOGE) under the Federal Advisory Committee Act (FACA), the Administrative Procedure Act (APA), the Mandamus Act, the Federal Declaratory Judgment Act, and the All Writs Act. (Filing 35). Plaintiff contends that "DOGE" is an advisory committee subject to FACA and seeks to compel Defendants to comply with FACA and the APA. (*Id.* at p. 2).

For starters, Plaintiff lacks standing, identifies no reviewable final agency action, and cannot obtain relief under FACA, the Declaratory Judgment Act, or the All Writs Act as standalone sources of jurisdiction. Even if Plaintiff had properly pled these threshold elements (which he has not), Plaintiff also does not plausibly allege the existence of an advisory committee subject to FACA. FACA applies only when the elements of an advisory committee are present, and Plaintiff's allegations do not establish them. Plaintiff relies primarily on pre-inauguration statements and speculation to support claims that "DOGE" is an advisory committee. But on inauguration day, President Trump redesignated the U.S. Digital Service as the U.S. DOGE Service ("USDS"), an entity within the Executive Office of the President. By Executive Order,

1

USDS is staffed by federal employees, which is the type of entity exempt from FACA. Notably, Plaintiff does not name USDS as a defendant, nor does he allege that USDS is itself an advisory committee. Instead, Plaintiff imagines a different entity called "DOGE" operating outside the government yet subject to FACA's requirements. But Plaintiff fails to adequately allege that this separate, imagined entity exists, or that it has the required elements of an advisory committee subject to FACA. Thus, Plaintiff fails to establish jurisdiction or state a claim for mandamus or APA relief. Plaintiff's other claims fail for similar threshold and pleading defects.

The amended complaint should be dismissed in its entirety.

## BACKGROUND

### I. Statutory Background

In 1972, Congress enacted FACA to address the growing cost and number of committees, boards, commissions, panels, and councils set up to advise the President and federal agencies. *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 453–54, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989); 5 U.S.C. § 1002. As the Supreme Court observed, "FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals[.]" *Public Citizen*, 491 U.S. at 453.

To accomplish Congress's goals, the statute imposes numerous requirements on the creation and operation of an advisory committee. Before an advisory committee can meet or take any action, it must (1) file a detailed charter either with the Administrator of the General Services Administration in the case of a committee reporting to the President or with the head of the agency to which it reports, and (2) designate a federal officer or employee to chair or attend each meeting of the advisory committee. 5 U.S.C. §§ 1008(c), 1009(e), 1013(b). An advisory committee must be "fairly balanced in terms of the points of view represented and the functions to be performed," and "not be inappropriately influenced by the appointing authority or by any special interest."

5 U.S.C. § 1004(b)(2), (3). Each such committee must (1) give advance notice in the Federal Register of any meeting; (2) hold all meetings open to the public; (3) keep detailed minutes of each meeting and copies of all reports received, issued, or approved by the advisory committee; and (4) make certain records available to the public for inspection and copying at a single location. 5 U.S.C. § 1009(a)–(c).

But Congress did not intend FACA "to cover every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Public Citizen*, 491 U.S. at 453–54. Nor could Congress do this anyway given the "serious separation-of-powers concerns inherent in legislation that imposes requirements on executive decision-making." *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 10 (D.D.C. 2018). To avoid these potential constitutional problems, "courts interpret FACA narrowly." *Id.* "The executive may, of course, consult with private advisors or stakeholders without triggering FACA." *Id.*

## II.  United States DOGE Service

On January 20, 2025, President Trump signed Executive Order 14158, which redesignated the previously established United States Digital Service as the U.S. DOGE Service (USDS) and charged it with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." Establishing and Implementing the President's "Department of Government Efficiency", 90 FR 8441, §§ 3(a), 4. The Executive Order also established within USDS a "U.S. DOGE Service Temporary Organization" pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026, confirming that the entity is a time-limited internal staffing mechanism for operational execution, not a standing advisory body subject to FACA. *Id.* § 3(b). Both USDS and the Temporary Organization sit within the Executive Office of the President and are headed by the USDS Administrator, who reports to the White House Chief of Staff. *Id.* Agency heads across the

Executive Branch are directed to establish within their respective agencies a DOGE Team of at least four agency employees who are hired or assigned to work within each agency to implement the President's agenda. *Id.* §§ 3(c). This directive confirms that DOGE operates through embedded agency personnel performing operational functions, not as an external advisory body.

## III.      This Litigation

Plaintiff filed an amended complaint on November 13, 2025, naming as defendants the Department of Government Efficiency (DOGE), the Office of Management and Budget (OMB), the Office of Personnel Management (OPM), and the Executive Office of the President (OEP). (Filing 35). Plaintiff brings ten causes of action[1] pursuant to the Federal Advisory Committee Act (FACA), 5 U.S.C. APP. 2 §§ 1-16; The Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; the All Writs Act, 28 U.S.C. § 1651; and the Court's power of Judicial Review. (Filing 35). In six of his causes of action, Plaintiff asserts that DOGE is an advisory committee and seeks review under APA, claiming that Plaintiff is entitled to a declaration that Defendants violated FACA. (Filing 35, ¶¶ 131-189[2]). Plaintiff also seeks a writ of mandamus to compel Defendants to "comply with the nondiscretionary requirements of FACA and APA." (Filing 35, p. 2).

Plaintiff's allegations rely heavily on pre-inauguration reporting and speculation about so-called DOGE operating outside the government. (Filing 35, ¶¶ 29-60). But Plaintiff does not allege facts showing that, after January 20, 2025, any such group had fixed membership, met collectively, deliberated as a body, or provided advice as an advisory committee established or

---

[1] Plaintiff lists two causes of action labeled as "Cause of Action – Sixth".  (Filing 35, pp. 34-35).

[2] Plaintiff lists three paragraphs numbered 1. (Filing 35, p. 2). The citations in the brief correspond to Plaintiff's numbered paragraphs.

utilized by the President or an agency. Plaintiff instead asks the Court to infer the existence of a de facto advisory committee from transition-period reports and conjecture.

In support of his claims, Plaintiff contends that DOGE is an advisory committee that began operating before President Trump took office. (Filing 35, ¶¶ 5, 29-46). The amended complaint largely consists of speculation about "DOGE" that circulated during the transition period (November 2024 to early January 2025). (Filing 35, ¶¶ 29-46). Plaintiff alleges that, in November 2024, then-President-Elect Trump "appointed Defendant Musk and Vivek Ramaswamy . . . to lead [DOGE]." (Filing 35, ¶ 29). Plaintiff also cites two pre–January 20, 2025 articles to support the claim that "DOGE was to be assigned office space" at the White House and OMB. (Filing 35, ¶¶ 43, 46). Also citing an article predating January 20, 2025, the amended complaint asserts that, beyond Mr. Musk and Mr. Ramaswamy, DOGE's membership consists primarily of private, individuals who are not federal employees, not a member of a union, and have no experience working on matters of national security. (Filing 35, ¶ 53-60). Plaintiff, however, does not identify any actions or statements on or after January 20, 2025, by any of the individuals who purportedly make up this "team" of "DOGE." (Filing 35, ¶¶ 1–130).

## LEGAL BACKGROUND

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On a Rule 12(b)(1) motion, Plaintiff bears the burden to establish subject-matter jurisdiction, and the Court may consider materials outside the pleadings. *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc). On a Rule 12(b)(6) motion, Plaintiff must plead sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although a pro se complaint is construed more liberally, a pro se plaintiff "still must allege sufficient facts to support the claims advanced," *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), and courts should not "supply additional facts" or "construct a legal theory for [a

5

pro se] plaintiff that assumes facts that have not been pleaded," *id.* (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Two further points of legal background bear mention. First, courts in the Eighth Circuit have confronted few cases under FACA, and therefore it is appropriate for this Court to look to cases in the D.C. Circuit for persuasive guidance. *See e.g., Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 35 F.4th 1225, 1244 (10th Cir. 2022) (looking to D.C. Circuit precedent because it "has decided more FACA cases than any other circuit"). Second, establishing mandamus jurisdiction requires a court to find, among other things, that Plaintiff has established a clear and indisputable right to relief, which means that the Court must scrutinize the sufficiency of the pleadings to determine jurisdiction. Although the merits and jurisdiction may merge in the mandamus context, the inquiry ultimately remains jurisdictional. *See, e.g.*, *Am. Oversight v. Biden*, No. CV 20-00716 (RJL), 2021 WL 4355576, at \*5–7 (D.D.C. Sept. 24, 2021) (dismissing FACA suit because the plaintiffs' deficient pleadings precluded them from establishing mandamus jurisdiction); *Food & Water Watch*, 357 F. Supp. 3d at 10–16 (same). In the end, however, because Plaintiff has failed to establish on the face of his amended complaint the existence of an advisory committee subject to FACA, the Court can dismiss the FACA mandamus claim on either jurisdictional or failure to state a claim grounds, as Defendants are moving under both Rule 12(b)(1) and Rule 12(b)(6).

## **ARGUMENT**

### I. **Plaintiff lacks Article III standing.**

To establish standing, Plaintiff must show an injury in fact that is it fairly traceable to Defendants' conduct and likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations omitted). Before *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), a litigant could establish a cognizable

6

informational injury by merely pleading that he was "denied access to materials to which he . . . claims a legal right[.]" *In re Reps. Comm. for Freedom of the Press*, No. 20-MC-0082, 2022 WL 6701785, at *3 (D. Minn. Oct. 11, 2022). But that standard has now changed in this circuit. The Eighth Circuit, quoting *TransUnion*, recently noted, "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *Reps. Comm. for Freedom of the Press v. United States*, 94 F.4th 746, 752 n.5 (8th Cir. 2024) (quoting *TransUnion*, 594 U.S. at 415). The court there held the plaintiff, a nonprofit organization dedicated to promoting the interests of journalists, must have had "'concrete plans' to review or use the materials" sought to be unsealed in order to have Article III standing. *Id.* at 751; *see also Merck v. Walmart, Inc.*, 114 F.4th 762, 776 (6th Cir. 2024) (finding that "an injury involving merely the denial of information subject to mandatory disclosure by statute—insufficient for standing").

Beyond claiming that he has been denied information, Plaintiff here fails to allege any injury that he has suffered or will suffer from "DOGE" not complying with FACA. Plaintiff alleges he was a state employee who lost his job because of reduced state general-fund dollars. (Filing 35, ¶¶ 1, 120, 122, 124). But Plaintiff pleads no facts plausibly linking that alleged injury to any challenged action by these Defendants not complying with FACA. His allegations instead rest on speculation that broad government "cutting" caused the reduction. (Filing 35, ¶ 121). *See Lujan, 504 U.S. at 560*–61 (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)). Speculation about broad government action is not a concrete, particularized injury traceable to these Defendants and their alleged failure to comply with FACA.

In *Emrit v. Musk*, No. 3:25-CV-03001, 2025 WL 2480552, at *3 (D.S.D. Aug. 28, 2025), the plaintiff sued Elon Musk, Vivek Ramaswamy, Mike Johnson, and the Department of Government Efficiency alleging that the defendants adversely affected persons who rely on

programs subsidized by the federal government. The plaintiff claimed he had standing to bring the lawsuit because he relied on services as an indigent, disabled, and unemployed resident. The court found the plaintiff lacked standing because he did not provide facts demonstrating that DOGE's activities caused him any injury. *Id.*

Here, Plaintiff makes a similar standing arguments, alleging Defendants' violations of FACA have injured Plaintiff and State government workers by: (1) reducing State general funds, (2) depriving government agencies of funds, (3) depriving workers of essential resources, (4) limiting ability to meaningfully participate in decisions which affect their livelihood, and (5) limiting ability to have a representative voice. (Filing 35, ¶¶ 139, 148, 162, 169, 178). Like the plaintiff in *Emrit*, Plaintiff has not demonstrated that DOGE's activities directly caused him any injury. Nor does Plaintiff explain how he has standing to challenge, in the abstract, government action as to funding provided to States and the effects upon State workers. *See Kowalski v. Tesmer, 543 U.S. 125, 129, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004)* (holding that a party must generally "assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties"). Moreover, Plaintiff does not explain how requiring "DOGE" and the other Defendants to comply with FACA will remedy any of these alleged injuries. Because Plaintiff fails to establish traceability, redressability, and his own cognizable injury as to the challenged conduct, the complaint should be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

## II. Neither FACA, the Declaratory Judgment Act, nor the All Writs Act provide a private right of action.

Plaintiff's FACA, Declaratory Judgment Act, and All Writs Act claims should be dismissed because they do not supply an independent cause of action. District courts in the D.C. Circuit have repeatedly held that "FACA does not supply an independent cause of action and

therefore does not establish the Court's subject matter jurisdiction." *Am. Chemistry Council, Inc. v. Nat'l Acad. of Scis.*, No. CV 23-2113 (JDB), 2024 WL 1141465, at *5 (D.D.C. Mar. 15, 2024) (citing *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 464 F. Supp. 3d 247, 265 (D.D.C. 2020), and *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 220–21 (D.D.C. 2017)); *see also Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32 (D.D.C. 2011), subsequent determination, 859 F. Supp. 2d 169 (D.D.C. 2012).

Similarly, Plaintiff's claims under the Declaratory Judgment Act and the All Writs Act likewise do not independently establish the Court's jurisdiction, and those claims should be dismissed for lack of jurisdiction. *See Schneider v. United States*, 27 F.3d 1327, 1330 (8th Cir. 1994) ("that there was no jurisdiction under the Declaratory Judgment Act because it only creates a remedy and cannot serve as an independent basis for subject matter jurisdiction."); *McKenzie Cnty., ND v. United States*, 131 F.4th 877, 887 (8th Cir.), *cert. denied sub nom. McKenzie Cnty., N. Dakota v. United States*, 146 S. Ct. 357, 223 L. Ed. 2d 190 (2025) (the All Writs Act itself "is not an independent source of subject matter jurisdiction.").

Therefore, a Court may review a FACA claim only through another jurisdiction-conferring statute, "typically, the Mandamus Act, 28 U.S.C. § 1361, or the federal question statute, *id.* § 1331, the latter of which is satisfied when a party brings an APA claim against a federal agency." *American Chemistry Council, Inc.*, 2024 WL 1141465, at *5. *See also Dunlap*, 464 F. Supp. 3d at 265; *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 125–26 (D.D.C. 2020). Thus, unless Plaintiff can establish jurisdiction through the APA or the Mandamus Act, his claims must be dismissed.

As described below, Plaintiff fails to establish jurisdiction for mandamus relief or the APA. And in any event, Plaintiff fails to establish the existence of an advisory committee at all, meaning that all his claims should be dismissed for failure to state a claim.

### III. Mandamus is precluded because the APA constitutes an adequate alternative remedy.

Plaintiff seeks a writ of mandamus under 28 U.S.C. § 1361 to compel Defendants to comply with the nondiscretionary requirements of FACA and the APA. (Filing 35, p. 2). Mandamus may issue under 28 U.S.C. § 1361 only in "extraordinary situations" and when the plaintiff can establish (1) "a clear and indisputable right to the relief sought," (2) "a nondiscretionary duty to honor that right," and (3) there is "no other adequate remedy." *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016). "In order for mandamus to lie[,] the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt." *Keeny v. Sec'y of Army*, 437 F.2d 1151, 1152 (8th Cir. 1971) (internal quotation omitted). Indeed, the Supreme Court cautioned that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if [Plaintiff] has exhausted all other avenues of relief." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984). Accordingly, the three threshold mandamus requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction. *See Wiese v. I.R.S.*, No. CV 85-0-463, 1985 WL 5971, at *1 (D. Neb. Oct. 28, 1985) (holding that the mandamus statute is a "jurisdictional statute" and dismissing plaintiff's claim for lack of jurisdiction because plaintiff "advanced no claim which merits" the "extraordinary [mandamus] remedy"); *see also Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

By invoking the APA, Plaintiff necessarily concedes the existence of an adequate alternative remedy, which forecloses mandamus. The Court should therefore analyze Plaintiff's claims, if at all, under the APA—not the extraordinary remedy of mandamus. *See Heckler*, 466

U.S. at 616 (mandamus unavailable where plaintiff has an adequate alternative remedy and cannot show a clear nondiscretionary duty).

A District Court in the Eastern District of Missouri recently found that a plaintiff bringing a similar FACA claim "can seek to compel agency action under 28 U.S.C. § 1361 or the APA, but [] cannot seek a duplicative remedy under both statutes." *Citizens Against Donald Trump Inc. v. Trump*, No. 4:25-CV-00311-SRC, 2026 WL 171774, at *4 (E.D. Mo. Jan. 22, 2026). The court noted that it had not found any Eighth Circuit precedent for this proposition but found the reasoning of other federal courts persuasive for two reasons. *Id. (citing Wright and Miller's Federal Practice & Procedure* § 8305 (2d ed. 2025)). First, both mandamus and APA claims require Plaintiff to demonstrate the absence of an adequate alternative remedy. *See Mitchael*, 809 F.3d at 1054; 5 U.S.C. § 704 (stating that courts can only review final agency actions "for which there is no other adequate remedy in a court"). And second, "the standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Mitchael*, 809 F.3d at 1054 (citing *Kangarloo v. Pompeo*, 480 F. Supp.3d 134, 142 (D.D.C. 2020) (further citations omitted); *cf. Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455 (8th Cir. 2018) (holding that claims under section 706(1) of the APA should be substantively reviewed as a petition for mandamus under the All Writs Act but not deciding the issue of whether the availability of APA relief negates the availability of mandamus relief).

Here, "[b]ecause the APA constitutes an adequate and available remedy—and Plaintiff seeks relief under the APA—Plaintiff cannot show entitlement to the extraordinary remedy of mandamus." *Citizens Against Donald Trump Inc.*, 2026 WL 171774 at *4 (citing *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of

mandamus."); *Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011) ("[Appellant] cannot satisfy the requirements for mandamus relief . . . [Appellant] has sued under the APA, which provides an adequate remedy."); *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1111 n. 10 (10th Cir. 2023); and *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996)). Because Plaintiff seeks to compel various agency action under both the APA and the Mandamus Act, this Court should follow the reasoning of the District Court for the Eastern District of Missouri and address all claims under the APA.

### IV. Plaintiff fails to allege final agency action regarding compliance with FACA and has thus not stated a valid claim under the APA.

Plaintiff alleges that by failing to comply with FACA, Defendants violated the APA. (Filing 35, ¶¶ 171-180, 205-207). *See* 5 U.S.C. § 706(2)(A), (D) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . (D) without observance of procedure required by law"). Before a Court can determine whether a defendant has violated the APA, it must find that two prerequisites are met: (1) the APA claims are brought against an agency or an agency official, and (2) there is final agency action being challenged. *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 34–41 (D.D.C. 2002).

Here, Plaintiff improperly named non-agency defendants for APA claims and has also failed to establish final agency action. As such, Plaintiff's APA claims fail at the threshold and should be dismissed.

#### A. Non-agency defendants are improper defendants for APA claims.

The APA applies only to agencies. *Citizens Against Donald Trump Inc.*, 2026 WL 171774, at *5. The APA broadly defines an "agency" as including "each authority of the Government of the United States." 5 U.S.C. § 551(1). But this broad definition doesn't reach all executive officials.

*Citizens Against Donald Trump Inc.*, 2026 WL 171774, at *5 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) (the President is not an "agency" under the APA.)).

For the reasons set forth below, DOGE and the Executive Office of the President are not agencies and, therefore, not subject to suit under the APA.

### 1. DOGE

Plaintiff claims that DOGE is an advisory committee subject to FACA. (Filing 35, ¶¶ 5, 133). In so doing, he must also concede that whatever Plaintiff means by DOGE, it is not an agency subject to the APA. *See Freedom Watch, Inc.*, 807 F. Supp. 2d at 33 (citing a long list of cases for the proposition that "[a]n entity cannot be at once both an advisory committee and an agency"); *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975) ("An advisory committee cannot have a double identity as an agency."); *but see Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 119 (D.D.C. 2020) (holding that a "Commission" could be both an agency under FOIA and an advisory committee subject to FACA). DOGE is not an agency. As such, DOGE is an improper defendant for purposes of APA review and should be dismissed with respect to Plaintiff's APA claims.

### 2. The Executive Office of the President.

The Executive of the President, as a whole, is not an agency under the APA. *See United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998) ("[I]t has never been thought that the whole Executive Office of the President could be considered a discrete agency."); *American Oversight*, 2021 WL 4355576, at *6 ("[O]ur Circuit has rejected the claim that the Executive Office of the President, as such, is an agency under the APA."). Thus, the Executive Office of the President is an improper defendant for purposes of APA review and should be dismissed with respect to Plaintiff's APA claims.

## B. Plaintiff fails to allege reviewable final agency action.

Plaintiff's APA claims fail as to all Defendants because there is no final agency action. Only "final agency action" is reviewable under the APA. 5 U.S.C. § 704. Such an action must be a "discrete" act, as plaintiffs are prohibited from leveling a "broad programmatic attack" on an agency's actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004). "For an agency action to be 'final' under the APA, the action must (1) mark the consummation of the agency's decisionmaking process, and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 518 (8th Cir. 2024) (citing *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597, 136 S. Ct. 1807, 195 L. Ed. 2d 77 (2016) (cleaned up)). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

Here, Plaintiff contends that each alleged failure to comply with FACA's requirements for creating an advisory committee constitutes final agency action under the APA. (Filing 35, ¶ 180). Plaintiff claims the following deficiencies: (1) the known associates of DOGE are not fairly balanced and Defendants inappropriately influenced DOGE (*id.* ¶¶ 135-138; 172-173); (2) DOGE failed to file a charter (*id.* ¶¶ 142-146); (3) DOGE meetings were not open to the public and notices of meetings were not published in the Federal Register (*id.* ¶¶ 151-158); (4) DOGE failed to make necessary documents publicly available (*id.* ¶¶ 159-161); and (5) DOGE has no Designated Federal Officer (*id.* ¶¶ 165-168). Plaintiff identifies no discrete, consummated agency action—only a broad programmatic challenge. These are not final agency actions.

Similar allegations were alleged in *Citizens Against Donald Trump Inc. v. Trump*, No. 4:25-CV-00311-SRC, 2026 WL 171774, at \*6 (E.D. Mo. Jan. 22, 2026). There, the plaintiff also claimed the defendants' failure to comply with FACA in relation to DOGE was a final agency

action. The court pointed out that an "agency's mere failure to act is not usually a final agency action triggering judicial review." *Id.* (citing *Organization for Competitive Markets*, 912 F.3d at 462). The court noted "the Eighth Circuit hasn't defined the contours of when an agency's mere failure to act matures into a final agency action". But the court listed three situations when a failure to act may become final agency action: (i) "if the agency affirmatively rejects a proposed course of action," (ii) "if the agency unreasonably delays in responding to a request for action," and (iii) "if the agency delays to the point until the requested action would be ineffective." *Id.* (citing *Gordon v. Norton*, 322 F.3d 1213, 1220 (10th Cir. 2003) (cleaned up)). None of these situations apply here.

Plaintiff—like the plaintiff in *Citizens Against Donald Trump Inc.*—merely declares that Defendants' failure to comply with FACA is a final agency action, which it is not. (Filing 35, ¶ 180). Worse, Plaintiff relies largely on pre-inauguration public statements, actions, and ideas to argue that Defendants are illegally using an advisory committee called DOGE. (Filing 35, ¶¶ 29-46). Plaintiff fails to point to any decision-making process and to a determination not to comply with FACA. And pre-inauguration conduct by private citizens does not count as agency action—much less final agency action—subject to APA review. *See Citizens Against Donald Trump Inc.*, 2026 WL 171774, at *6 (finding an agency or sub-agency "cannot act until it legally exits").

Although the amended complaint does include some allegations post-January 20, 2025, those allegations are minimal and fail to bridge the gap between preliminary discussions during a president-elect's transition and final agency action. (Filing 35, ¶¶ 70-86). For example, the post-inauguration allegations do not plausibly show that Defendants engaged with or acted upon advice from any agency advisory committee called "DOGE". *Id.* Plaintiff focuses entirely on early-stageplans, ideas, and proposals associated with a then-presidential transition team. At most, these

allegations fall within the realm of "preliminary" and "tentative" action before a president-elect has even taken office, which is expressly outside the scope of APA review.

The Court should dismiss all of Plaintiff's APA FACA claims for lack of final agency action.

**V.      Plaintiff fails to adequately allege a violation of the APA or a valid claim for mandamus, because Plaintiff has failed to allege the existence of a federal advisory committee.**

Even if the Court determines it has jurisdiction over Plaintiff's claims for mandamus relief or APA review, Plaintiff's FACA claims should be dismissed for failure to state a claim. First, Plaintiff failed to allege that any advisory committee subject to FACA exists and therefore fails to state a claim under FACA. Second, neither FACA nor its implementing regulations provides this Court with meaningful standards to determine whether any alleged committee is unfairly balanced or inappropriately influenced. And finally, if Plaintiff's claims were allowed to proceed, they would unconstitutionally encroach on the President's Article II power to obtain confidential advice and information

**A.      Plaintiff has not alleged that "DOGE" bears the elements of an advisory committee, so the APA and mandamus counts fail as a matter of law.**

Plaintiff claims that some entity called "DOGE" is an advisory committee within the meaning of FACA. (Filing 35, ¶¶ 5, 133). Plaintiff's theory collapses at the threshold: he has not plausibly alleged the existence of any advisory committee subject to FACA, and that failure is dispositive. (Filing 35, ¶¶ 135-138, 143-147, 151-161, 165-168, 172-177, 183-188). Although it is unclear whether Plaintiff brings these claims under the APA or Mandamus, either way, Plaintiff's FACA claims fail because Plaintiff cannot establish that DOGE is an advisory committee.

To start, a "de facto" advisory committee is "at a minimum . . . difficult to prove," *Food & Water Watch*, 357 F. Supp. 3d at 11, and any finding that one exists with respect to any group of people that advises the President would be constitutionally suspect, *see* infra Part V.C. The D.C. Circuit has also found that, "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch." *AAPS*, 997 F.2d at 914. Thus, in addition to establishing the strict requirements for mandamus relief, Plaintiff faces an even higher hurdle in attempting to establish the existence of a de facto advisory committee in this context. This hurdle undercuts Plaintiff's APA claims as well. Plaintiff does not come close to clearing that hurdle.

To state a claim for mandamus relief or APA review, Plaintiff needs to establish first that a de facto advisory committee called DOGE exists and meets all the elements for an advisory committee. There are at least three necessary elements a group must satisfy to be considered an "advisory committee" subject to FACA: (1) the committee must be "established or utilized" by the President or an agency, 5 U.S.C. § 1001(2)(A); (2) the committee must have a sufficient degree of formality that includes an organized structure, a fixed membership, and a unified approach to providing advice, *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"), 997 F.2d 898, 914 (D.C. Cir. 1993); and (3) the committee must include non-federal employees with a vote or a veto over the committee's conclusions. *In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc).

While Plaintiff alleges DOGE was an advisory committee prior to President Trump's inauguration, he recognizes that the President issued Executive Order 14158 on January 20, 2026, and renamed the U.S. Digital Service to the U.S. DOGE Service ("USDS"). (Filing 35, ¶¶ 67-68). Plaintiff does not name USDS as a defendant and does not claim that USDS is an advisory committee. Nor does Plaintiff contend that DOGE—as part of USDS—is an advisory committee.

17

Instead, Plaintiff claims that an entity called "DOGE" operated as an advisory committee *prior to* President Trump's inauguration. (Filing 35, ¶¶ 29-46). The date of the allegations is legally significant for purposes of FACA. FACA applies only to advisory committees that are established or utilized by a sitting President or a federal agency—not to groups that may (or may not) have existed for the benefit of a President-Elect.[3] *See* 5 U.S.C. § 1001(2)(A).

Plaintiff devotes much of his amended complaint alleging facts that, at best, show certain individuals advising President-Elect Trump. It would require the suspension of disbelief to conclude that Congress designed FACA to reach the type of informal, pre-inauguration activity Plaintiff describes. But those allegations fail to plead a factual connection between those pre-inauguration events (even assuming they are true) and any actions taken by an advisory committee during President Trump's time in office. For example, Plaintiff lists a few names beyond Elon Musk who were allegedly associated with the idea of DOGE before President Trump's inauguration, including Vivek Ramaswamy, Marc Andreessen, and William Jospeh McGinley. (*See* Filing 35, ¶¶ 29-56 (providing sources and dates that all predate January 20, 2025). But Plaintiff never pleads facts indicating that any of these individuals ever met together on a regular basis, engaged in collective deliberation, and collectively advised the President or an agency before, on, or after President Trump's inauguration. That failure is fatal to Plaintiff's claims. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, ("*AAPS*"), 997 F.2d 898, 913–14 (D.C. Cir. 1993); *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 11 (D.D.C. 2018).

---

[3] To sharpen the point, a plaintiff cannot simply allege that some group of individuals out there is advising a private citizen and thereby trigger FACA. Yet, even viewing the amended complaint in its most favorable light, that is effectively what Plaintiffs allege—a group of individuals allegedly advising someone who was not yet President.

Moreover, even if Plaintiff had pleaded that some entity called "DOGE" (that is not USDS) existed after inauguration day, Plaintiff has not demonstrated that this entity meets any of the necessary criteria for FACA to apply. Plaintiff has not shown that "DOGE" was ever established or utilized as a committee, that it possesses sufficient structure, or that it includes any non-federal employees with a vote or veto over its decisions. Plaintiff has not demonstrated on the face of his Amended Complaint that Defendants are obligated to comply with FACA's requirements. Consequently, Plaintiff's FACA claims should be dismissed for failure to state a claim.

**B. FACA's fair balance and inappropriate influence provisions are not justiciable.**

Plaintiff describes DOGE as not fairly balanced in representation, complaining that DOGE fails to include perspectives Plaintiff believes should be represented. (Filing 35, ¶¶ 57-66). And Plaintiff seeks a declaration from the Court stating that Defendants failed to ensure the composition of DOGE was "fairly balanced and without undue influence." (*Id.* p. 38, Prayer for Relief #2). That statutory language, however, affords no basis for judicial review.[4] Under the APA, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105

---

[4] There is a split in the circuits on the justifiability of "fair balance" and "inappropriate influence." *Compare Cargill, Inc. v. United States*, 173 F.3d 323, 334–41 (5th Cir. 1999) (finding that FACA's fair balance and inappropriate influence provisions were reviewable); *Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1106–07 (11th Cir. 1994) (conducting review under FACA's fair balance provision, though not expressly addressing a challenge to its reviewability); *with Ctr. for Pol'y Analysis on Trade & Health (CPATH) v. Off. of U.S. Trade Representative*, 540 F.3d 940, 943–45 (9th Cir. 2008), *as amended* (Oct. 8, 2008) (finding FACA's fair balance requirement not reviewable in the particular scenario complained of because it provided "no meaningful standards to apply" nor "articulate[d] what perspectives must be considered"); *see also* Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 426, 430–31 (D.C. Cir. 1989) (Silberman, J., concurring) (finding the fair balance and inappropriate influence requirements not reviewable because there was no "meaningful standard . . . susceptible of judicial application"). The Eighth Circuit has not had occasion to decide this justiciability question. If the Court concludes that Plaintiff has not adequately alleged the existence of an advisory committee, the Court need not reach the question of justiciability.

S. Ct. 1649, 84 L. Ed. 2d 714 (1985). When a legislative goal is announced "in such broad terms," courts properly infer that Congress intended to "commit[]" decisionmaking to the agency's "discretion," leaving no room for judicial second-guessing. *Id.* That is the case here. Congress not only declined to provide any express mechanism for judicial review under FACA; it also declined, in the text of sections 1004(b)(2) and 1004(b)(3), to enact any judicially manageable standards that could serve as a basis for review of substantive membership decisions under the APA. *See Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods (Microbiological)*, 886 F.2d 419, 426, 430–31 (D.C. Cir. 1989) (Silberman, J., concurring).

First, the "fair balance" provision in 5 U.S.C. § 1004(b)(2) does not define "fairly balanced," nor does it specify how a "fairly balanced" membership on an advisory committee is to be achieved, in terms of either the type of representatives or the functions such representatives perform. As an initial matter, "even before the points of view on an advisory committee can be balanced at all—'fairly' or otherwise—it must first be determined which points of view should be balanced." *Microbiological*, 886 F.2d at 426 (Silberman, J., concurring). And there is no "principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees." *Id.* The "relevant points of view on issues to be considered by an advisory committee are virtually infinite." *Id.*; *see also Doe v. Shalala*, 862 F. Supp. 1421, 1430 (D. Md. 1994). These provisions supply no judicially manageable standards and are therefore not subject to review.

There is similarly no "principled way" to determine whether those views are fairly balanced. *Microbiological*, 886 F.2d at 428 (Silberman, J., concurring). Such a determination would require the court to make "arbitrary judgments" about "which organizations or individuals qualified as bona fide" representatives of particular policy views. *Id.* at 428–29; *see also Fertilizer*

*Inst. v. EPA*, 938 F. Supp. 52, 54 (D.D.C. 1996). Such a task is a "hopelessly manipulable" political question that is "best left to the executive and legislative branches of government." *Center for Policy Analysis on Trade and Health (CPATH)*, 540 F.3d at 945.

Nor is the "inappropriate influence" provision in FACA justiciable. Congress also did not define "inappropriately influenced" or "special interest," nor did it specify any procedures to assure that the "advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest," within the meaning of section 1004(b)(3). This Court lacks meaningful standards to measure if this requirement has been met. 5 U.S.C. § 1004(b)(3); *see id.* § 1004(c) (providing that "[t]o the extent they are applicable, the guidelines set out in subsection (b) shall be followed by the President, agency heads, or other Federal officials in creating an advisory committee").

To determine whether an advisory committee's advice and recommendations have been inappropriately influenced by the appointing authority or special interests, a reviewing court would need to answer at least three questions. First, the Court must determine "when an interest is 'special' as opposed to 'general[.]'" *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring). But a court does not "have any way to determine what [special interest] means for purposes of judicial review [as] . . . virtually anyone in the United States . . . [c]ould have . . . a special interest with regard to some—perhaps all—advisory committees." *Id.* at 430–31. Second, a court must be able to determine when a special interest (or the appointing authority) exerted "inappropriate influence." *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1231 (10th Cir. 2004) (per curiam). But "[t]he statute does not give us any guidance as to when the line is crossed between appropriate and inappropriate influence." *Id.* Third, section 1004(b)(3) "on its face, is directed to the establishment of procedures to prevent 'inappropriate' external influences on an already constituted advisory

committee by outside special interests or the appointing body." *Microbiological*, 886 F.2d at 430 (Silberman, J., concurring). A court would thus need to put itself in the shoes of the President or agency administrator and determine how, preemptively, to prevent special interests (which are not defined) from exerting inappropriate influence (which is not defined). Courts are ill-suited to craft the necessary safeguards out of whole cloth, as doing so is "really an executive branch function." *Fertilizer Institute*, 938 F. Supp. at 55. These provisions likewise provide no judicially manageable standards and are not subject to judicial review.

In sum, neither FACA nor its implementing regulations provide this Court with meaningful standards to determine whether any alleged committee is unfairly balanced or inappropriately influenced, as Plaintiff alleges. Accordingly, Plaintiff's claims that are premised on violations of these provisions are nonjusticiable.

**C.      Ruling in Plaintiff's Favor Would Interfere with the President's Article II Right to Confidentially Receive Advice and Information.**

Plaintiff's FACA claims should also be dismissed because, if those claims were allowed to proceed, they would unconstitutionally encroach on the President's Article II power to obtain confidential advice and information.

Article II of the U.S. Constitution authorizes the President to "require the Opinion, in writing, of the principal Officer in each of the executive Departments" and "recommend to [Congress's] Consideration such Measures as he shall judge necessary and expedient." U.S. Const. art. II, § 2, cl. 1; *id.* § 3. Moreover, the Constitution requires the President to report to Congress on the State of the Union and "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. To fulfill these enumerated duties, the President must be able to consult with his chosen advisor and to obtain their candid guidance and expertise. As one legal commentator has noted, "gathering information is the first, crucial step in the presidential policymaking process. The

operation of FACA threatens to disturb this process and thereby disrupt a fundamental function that is unquestionably the province of the President making executive decisions." Michael J. Mongan, *Fixing FACA: The Case for Exempting Presidential Advisory Committees from Judicial Review Under the Federal Advisory Committee Act*, 58 Stan. L. Rev. 895, 906 (2005).

Constitutional concerns with FACA are not new. Indeed, courts have long recognized that FACA potentially raises separation of powers problems and could interfere with a President's Article II powers. *See, e.g., Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 370, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004) ("Special considerations control when the Executive's interest in maintaining its autonomy and safeguarding its communications' confidentiality are implicated."); *AAPS*, 997 F.2d at 910 ("A statute interfering with a President's ability to seek advice directly from private citizens as a group, intermixed, or not, with government officials, . . . raises Article II concerns."). And the Supreme Court has instructed courts to interpret FACA narrowly to avoid these constitutional problems. *See Pub. Citizen*, 491 U.S. at 452. The D.C. Circuit has recognized that FACA does not override the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties; the importance of this confidentiality is too plain to require further discussion." *AAPS*, 997 F.2d at 909 (quoting *United States v. Nixon*, 418 U.S. 683, 705–06, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)). "Article II not only gives the President the ability to consult with his advisers confidentially, but also, as a corollary, it gives him the flexibility to organize his advisers and seek advice from them as he wishes." *Id.*

Here, even assuming the existence of the advisory committee that Plaintiff claims exists, these claims pose a constitutional conflict by compromising core executive functions. The relief Plaintiff seeks would interfere with the President's enumerated Article II duties by intruding on

his ability to freely seek advice and gather information. Plaintiff's claims raise at least two constitutional concerns.

First, Plaintiff seeks to compel an uncertain, shifting number of private individuals—who may have advised the President during his transition period—to publicize their communications and meetings with the President, and to require them to be open to the public. This would make it impossible for the President to receive honest, forthright, and accurate advice. The government officials and industry leaders from whom the President may seek advice would be less likely to provide such advice if there was a risk that their constituents, colleagues, or stockholders could read a transcript of their comments the next day. This chilling effect of FACA's application to this case would run afoul of the Constitution by disrupting the President's ability to obtain the advice and information he needs to make fully informed decisions.

Second, Plaintiff asks the Court to control the composition of the President's advisory circle. By alleging DOGE is not represented by specified categories of people (Filing 35, ¶¶ 57-60), Plaintiff implies he knows best who should have a seat at the President's advisory table. But courts should not be in the business of deciding from whom the President can seek advice—as that would raise serious separation of powers concerns.

Ultimately, Plaintiff's claims are constitutionally problematic. Still, the Court need not reach this question, however, because Plaintiff failed to plead the facts necessary to establish the existence of a de facto advisory committee to establish mandamus jurisdiction or to plead a viable APA claim. These defects justify dismissal, which avoids these constitutional questions. *See Jennings v. Rodriguez*, 583 U.S. 281, 286, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations,

a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

**VI.    Plaintiff's Federal Records Act claim (second count 6) should be dismissed.**

The Federal Records Act does not provide a private cause of action, and that defect is dispositive. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149–50, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980). Although the Act defines federal "records" broadly, 44 U.S.C. § 3301(a)(1)(A), it assigns enforcement to agency heads and the Archivist—not private litigants. Under the statute, agency heads must implement safeguards against the loss or removal of records, and, if necessary, request action by the Attorney General through the Archivist. 44 U.S.C. §§ 3105, 3106(a). This administrative enforcement scheme channels enforcement through internal executive-branch mechanisms and forecloses private suits to police alleged recordkeeping deficiencies. *Kissinger*, 445 U.S. at 149–50. Plaintiff's attempt to invoke the FRA therefore fails at the threshold because Congress did not authorize private enforcement of these obligations.

Even if the Court were to look beyond that threshold defect, Plaintiff's claims fail for an independent reason. Courts have made clear that private litigants may not use the FRA to challenge alleged failures to create or preserve records by agency employees, and any review is limited to narrow circumstances not present here. *Armstrong v. Bush*, 924 F.2d 282, 294–95 (D.C. Cir. 1991). Instead, judicial review—if available at all—is limited to narrow challenges to specific agency recordkeeping policies or to an agency head's refusal to seek enforcement under § 3106Instead, he asserts only generalized allegations that Defendants failed to create or preserve records. But such allegations amount to an impermissible attempt to police day-to-day recordkeeping practices—precisely the type of claim *Armstrong* holds is not reviewable.

Additionally, Plaintiff's claim fails because it assumes that all components of the Executive Office of the President (EOP) are subject to the Federal Records Act. That is incorrect. Some EOP

components are governed by the FRA, while others—those that advise and assist the President—are governed by the Presidential Records Act (PRA). See *Id.* Plaintiff does not identify any specific EOP entity subject to the FRA, which is dispositive.

Plaintiff's claim fails for a further reason: it does not identify any discrete, reviewable agency action. *See* 5 U.S.C. § 704. Rather, Plaintiff advances a broad, programmatic challenge to Defendants' alleged recordkeeping practices. The APA does not permit such claims. *See Norton*, 542 U.S. at 64.

The Act defines federal "records" as materials made or received by an agency in connection with public business and preserved as evidence of agency activities. 44 U.S.C. § 3301(a)(1)(A). But Congress assigned enforcement of federal recordkeeping obligations to agency heads and the Archivist—not private litigants. *Id.* Plaintiff's claim therefore fails at the threshold.

Because Plaintiff neither invokes a valid cause of action, identifies a cognizable theory under *Armstrong*, identifies any specific EOP entity subject to FRA, nor challenges a discrete agency action, his FRA claim fails as a matter of law and must be dismissed.

### A. Any claims challenging the Defendants' recordkeeping policies should be dismissed for failure to state a claim.

In his sixth cause of action (second), Plaintiff asserts a violation of the APA and claims that DOGE violated 44 U.S.C. Chapter 31 by failing to preserve records containing adequate and proper documentation and failing to establish safeguards against the removal or loss of records. (Filing 35, ¶¶ 190-195). Claims relating to recordkeeping policies should be dismissed for failure to state a claim because the Plaintiff fails to demonstrate that Defendants' recordkeeping systems, whether formal or informal, are inadequate.

### 1. Plaintiff fails to identify a single deficiency in any of the Defendants' recordkeeping policies.

Plaintiff merely asserts that Defendants failed to create and preserve records or establish any safeguards against the removal or loss of records. (Filing 35, ¶¶ 190-195). This vague and conclusory allegation is insufficient to raise a right of relief beyond mere speculation. Plaintiff does not allege that official agency policies permit the destruction of record material that should be maintained.

Because the FRA "does not contain an express or implied private right of action[.]" *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (citing *Kissinger*, 445 U.S. at 148–50), a plaintiff seeking to assert a violation of the FRA must rely on the causes of action set forth in the APA, 5 U.S.C. § 706. And the APA requires that any challenge identify a final "discrete agency action" rather than a "'broad programmatic attack' on an agency's compliance with a statutory scheme." *Citizens for Resp. & Ethics in Washington (CREW) v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 49 (D.D.C. 2019), *amended,* No. CV 18-2473 (RC), 2019 WL 11307644 (D.D.C. July 22, 2019) (citation omitted). Specifically, to state a claim challenging an agency's recordkeeping policy, the complaint "must allege facts that could plausibly lead the Court to find the contested policy 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *CREW v. Pompeo ("Pompeo I")*, No. 19-cv-3324, 2020 WL 1667638, at *6 (D.D.C. Apr. 3, 2020) (quoting *Jud. Watch, Inc. v. FBI*, No. CV 18-2316 (RC), 2019 WL 4194501, at *9 (D.D.C. Sept. 4, 2019)); 5 U.S.C. § 706(2)(A).

Plaintiff fails to make "precise factual allegations" identifying "particular deficiencies" in Defendants' policies, as would be necessary to state a claim challenging agency FRA guidelines. *See Judicial Watch, Inc.*, 2019 WL 4194501, at *9. In *Judicial Watch*, for instance, the plaintiff specifically alleged that the defendant agency had failed to establish "effective controls" over the

agency's maintenance of records in the form of "non-email electronic messages, including text messages." *Id.* at *1. The court held that the plaintiff's claim was reviewable under *Armstrong* and the APA because it did not merely rely on the "systemic noncompliance of FBI employees" for the notion that the agency's controls were ineffective, but instead "expressly contest[ed] the adequacy of the FBI's recordkeeping policy for a specific category of records: electronic records, excluding email." *Id.* at *6 (citation omitted). The court nevertheless dismissed the plaintiff's claim because the plaintiff had failed to make "precise factual allegations that highlight which particular deficiencies" in the FBI's written recordkeeping guidelines rendered their controls ineffective. *Id.* at *9. The court concluded that the plaintiff in that case thus failed to make out a plausible claim for relief. *Id.* at *10.

And the Amended Complaint here fails even more clearly. Indeed, Plaintiff fails to suggest any particular deficiencies in Defendants' written FRA policies. Plaintiff alleges that "Defendants have not 'preserve[d] records containing adequate and proper documentation of the organization, function, policies, decisions, procedures, and essential transactions of the agency." (Filing 35, ¶ 193). Yet, Plaintiff's claims rely entirely on broad allegations of the type of "systemic noncompliance" by Defendants that the court in *Judicial Watch* suggested would be insufficient to sustain a claim. *See Judicial Watch, Inc.*, 2019 WL 4194501, at *6. Where, as here, the plaintiff "vaguely allude[s] to the Department's policies" but fails to "describe what those policies are" or specifically how those policies are deficient, let alone actual widespread noncompliance by agency employees, the allegations are insufficient to challenge an agency's policy as arbitrary, capricious, or contrary to the FRA. *Pompeo I*, 2020 WL 1667638, at *7.

28

### 2. Plaintiff fails to state a claim under the FRA challenging alleged informal policies or practices.

Similarly, Plaintiff has not alleged sufficient facts to plausibly support the conclusion that specific instances of alleged noncompliance by Defendants trickles down to their subordinates in contravention of the formally established recordkeeping policies. Plaintiff's Sixth Cause of Action (Second) specifically alleges that, "Defendants have not 'preserve[d] records containing adequate and proper documentation of the organization, function, policies, decisions, procedures, and essential transactions of the agency." (Filing 35, ¶ 193). And "Defendants have not 'established safeguards against the removal or loss of records.'" (Filing 35, ¶ 194). Such vague and conclusory assertions, without any specific facts, fail to raise the right of relief beyond pure speculation. Thus, Plaintiff's sixth cause of action (second) must be dismissed.

Even assuming for the sake of argument that such a policy or practice claim could be cognizable under the FRA, Plaintiff fails to allege sufficient facts to show an agency-wide, informal policy or practice.

### B. To the extent Plaintiff claims a violation of FOIA, such claims should be dismissed.

According to Plaintiff, OMB and OPM failed to comply with their FOIA obligations (Filing 35, ¶¶ 98-101). But he does not proceed under FOIA's cause of action in 5 U.S.C. § 552. Instead, Plaintiff attempts to repackage those claims under the APA. (Filing 35, ¶ 192). That approach fails as a matter of law.

The APA provides no mechanism for such claims where FOIA supplies an adequate remedy, and the claim should thus be dismissed for failure to state a claim.

The APA "limits judicial review under that statute to agency actions 'for which there is no other adequate remedy in a court.'" *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 846 F.3d 1235, 1238 (D.C. Cir. 2017) (quoting 5 U.S.C. § 704). As the Supreme Court has

explained, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action[,]" and "§ 704 does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.*" *Bowen v. Massachusetts*, 487 U.S. 879, 903, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988). Accordingly, where "another statute provides an adequate remedy," APA review is unavailable. *See Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005). FOIA provides for judicial review and remedies when an agency improperly responds to or denies a FOIA requests, 5 U.S.C. § 552(a)(4)(F), and the D.C. Circuit has made clear that absent the specific circumstances set forth in that section, courts are "not authorized to make advisory findings of legal significance on the character of the agency conduct vis-a-vis any requester of information," *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

Here, Plaintiff has an adequate, alternative remedy under FOIA for his claims that are premised on violations of FOIA. A given FOIA requester, including Plaintiff, can sue under FOIA and receive judicial review. *See Fletcher v. U.S. Dep't of Just.*, 17 F. Supp. 3d 89, 94 (D.D.C. 2014); 5 U.S.C. § 552(a)(4)(B). FOIA thus provides an adequate, alternative remedy for Plaintiff to pursue any claim it could conceivably have for an inadequate response to its FOIA requests. As a result, Plaintiff's APA claims premised on a violation of FOIA are precluded. *See, e.g.*, *Feinman v. F.B.I.*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010); *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C. 2013).

Finally, it is the government's position that USDS is not an agency for purposes of FOIA or the APA. So Plaintiff cannot assert such claims under either FOIA or the APA.

## VII. Plaintiff's constitutional claims fail (counts 7-8).

Plaintiff's constitutional claims fail at the threshold. Although framed under the Take Care Clause and separation-of-powers principles, these claims do not identify any independent

constitutional violation. Instead, they merely recast alleged statutory violations in constitutional terms. That is not cognizable and does give rise to a justiciable constitutional claim.

In his seventh and eighth causes of action, Plaintiff attempts to recast alleged statutory violations as constitutional claims, asserting that Defendants lacked authority to "adopt and implement a committee" and "failed to provide a reasoned explanation for how their E.O. ensures the EOP is 'taking care' that the laws be faithfully executed." (Filing 35, ¶¶ 199, 205). Those allegations simply reassert purported statutory defects in constitutional language and therefore fail as a matter of law.

### A.  The Take Care Clause does not create a private cause of action.

The Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. But that provision does not create a private right of action or authorize judicial review of how the Executive Branch carries out its duties. Courts have repeatedly recognized that the Clause assigns responsibility to the Executive; it does not invite judicial supervision of discretionary executive functions. *See State of Mississippi v. Johnson*, 71 U.S. 475, 499, 18 L. Ed. 437 (1866); *Dalton v. Specter*, 511 U.S. 462, 473, 114 S. Ct. 1719, 128 L. Ed. 2d 497 (1994); *see also Arizona v. Mayorkas*, 600 F. Supp. 3d 994, 1011 (D. Ariz. 2022) (questioning whether Take Care Clause claims are cognizable at all).

Indeed, the Supreme Court has made clear that the President's duty to 'take care' that the laws are faithfully executed is "purely executive and political" and not subject to judicial direction. *State of Mississippi*, 71 U.S. at 499. Allowing a plaintiff to enforce that duty through a private cause of action would improperly transfer supervision of core executive functions to the Judiciary.

Plaintiff therefore lacks a cause of action to bring these claims.

**B.      Plaintiff's claims merely repackage alleged statutory violations as constitutional.**

Even setting aside the absence of a cause of action, Plaintiff's claims fail because they are not constitutional in substance. Plaintiff does not allege any independent constitutional violation but instead challenges the matter in which statutory authority has been exercised—recasting alleged statutory noncompliance as a constitutional defect. The Supreme Court has made clear that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton*, 511 U.S. at 473. Courts must "distinguish between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* at 472.

That distinction controls here. Plaintiff alleges that Defendants lacked authority to act under federal statutes and failed to comply with statutory requirements. (Filing 35, ¶¶ 199, 205). But those allegations, even if true, would establish only a statutory violation—not a violation of the Constitution. Plaintiff identifies no independent constitutional constraint that Defendants allegedly violated.

This case therefore turns on the meaning of the relevant statutes—a purely statutory dispute with no constitutional dimension. *See Dalton*, 511 U.S. at 474.

**C.      The Claims Fail Regardless of the President's Non-Party Status.**

Plaintiff's theory also fails for a more basic reason: the Take Care Clause governs the President, yet the President is not a defendant here. That mismatch is dispositive. A claim premised on a constitutional duty assigned exclusively to the President cannot be maintained against different actors who do not bear that duty. The Clause therefore does not supply a basis for relief against subordinate officials or components of the Executive Office of the President, and Plaintiff cannot circumvent that limitation by relabeling his claims or suing adjacent entities.

This follows from the structure of the Clause itself. The Clause "speaks only to the President," and ensures that he—not subordinate officials—is politically accountable for the execution of federal law. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010). A subordinate official cannot violate the President's Take Care duty. To the extent Plaintiff challenges agency action, those claims must arise—if at all—under applicable statutes, not the Take Care Clause.

**D.      The Requested Relief Is Nonjusticiable and Raises Serious Separation-of-Powers Concerns.**

Plaintiff's claims fail independently because the relief he seeks would require the Court to supervise the Executive's performance of its core constitutional functions. Ultimately, Plaintiff asks the Court to direct how the Executive implements and prioritizes federal law—relief that would necessarily entail ongoing judicial oversight of discretionary executive decision-making. That is not the role the Constitution permits the courts to assume.

The Supreme Court has long distinguished between ministerial duties, which may be subject to judicial compulsion, and discretionary executive functions, which are not. *Mississippi v. Johnson, 71 U.S. 475, 499 (1867)*. Where "nothing [is] left to discretion" and the law requires the performance of "a single specific act," judicial relief may be appropriate. *Id.* But the President's duty to "see that the laws are faithfully executed" is "in no just sense ministerial" and instead is "purely executive and political." *Id.* Courts therefore may not compel or restrain the performance of such discretionary functions without intruding on the separation of powers.

That principle applies with full force here. Plaintiff does not seek to compel a discrete, ministerial act; he seeks to alter how the Executive enforces, prioritizes, and implements federal law. Those determinations necessarily involve judgment, policy, and resource allocation—quintessentially discretionary functions committed to the Executive Branch. Judicial intervention

33

in that sphere would raise profound separation-of-powers concerns and reflect a "lack of the respect due" to a coordinate branch. *See Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962).

The defect in Plaintiff's theory is therefore structural. Allegations of under-enforcement, improper prioritization, or flawed implementation do not state a judicially cognizable constitutional claim. They challenge the exercise of executive discretion, not the violation of a ministerial legal duty. Plaintiff's claims thus invite the Court to assume a supervisory role over the Executive Branch that Article III does not authorize.

### E. Plaintiff Lacks Standing.

Plaintiff's constitutional claims also fail for lack of Article III standing. The Amended Complaint relies on generalized allegations of harm to third parties, including "state residents and workers." (Filing 35, ¶¶ 139, 148, 162, 169, 178). Such allegations do not constitute the concrete and particularized injury required for standing. *See Lujan*, 504 U.S. at 560–61. Nor may Plaintiff assert the rights of third parties to manufacture standing. *See Kowalski*, 543 U.S. at 129.

Because Plaintiff identifies no cause of action, no independent constitutional violation, and no justiciable basis for relief—and lacks standing in any event—Counts 7 and 8 must be dismissed.

## VIII. Plaintiff's payment claim (count 9) should be dismissed.

Plaintiff's final claim challenges alleged access to federal payment systems by DOGE personnel. (Filing 35, ¶¶ 209-211). But Plaintiff does not identify any statute or constitutional provision creating a cause of action that would allow a private party to challenge internal financial-management practices in this manner. Nor does Plaintiff plausibly allege that any such access caused him a concrete injury.

Instead, Plaintiff relies on speculative assertions regarding possible harm to the public or to government operations. Those allegations are insufficient to establish Article III standing. *See*

*Lujan,* 504 U.S. at 560–61. Because Plaintiff lacks standing and has failed to identify any cognizable legal basis for relief, count nine should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff fails to identify any cognizable cause of action, fails to allege a justiciable constitutional violation, and lacks Article III standing. The Court should therefore dismiss Plaintiff's Amended Complaint with prejudice for lack of jurisdiction and for failure to state a claim.

Respectfully Submitted,

DEPARTMENT OF GOVERNMENT
EFFICIENCY; EXECUTIVE OFFICE OF THE
PRESIDENT; OFFICE OF MANAGEMENT AND
BUDGET; AND OFFICE OF PERSONNEL
MANAGEMENT**,** Defendants

LESLEY A. WOODS
United States Attorney
District of Nebraska

By:  s/ Amanda Phillips Brown
AMANDA PHILLIPS BROWN, #24526
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Tel:  (402) 661-3700
Fax:  (402) 661-3081
E-mail:  amanda.brown2@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(1)(D), I certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word for Office 365 MSO, this document contains 11,176 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

s/ Amanda Phillips Brown
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:

Sean Michael Hill, III
8790 F Street, Ste 702
Omaha, NE 68127

s/ Amanda Phillips Brown
Assistant U.S. Attorney